# The United States Court of Federal Claims

No. 12-705C
(Filed:  March 12, 2013)*
**\*Opinion Originally Filed Under Seal on March 1, 2013**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| G4S TECHNOLOGY CW LLC, | \* **Post-award Bid Protest; Standing Under** |
| | \* **28 § U.S.C. 1491(b)(1); Interested Party;** |
| Plaintiff, | \* **Substantial Chance of Award;** |
| | \* **Discussions Versus Clarifications; Agency** |
| v. | \* **Discretion to Exclude Offeror for** |
| | \* **Incomplete Proposal** |
| THE UNITED STATES, | \* |
| | \* |
| Defendant, | \* |
| | \* |
| M.C. DEAN, INC., | \* |
| | \* |
| Defendant-Intervenor. | \* |
| | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Lewis S. Wiener*, Washington, DC, for plaintiff.  *James J. Briody* and *G. Brendan Ballard*, Washington, DC, of counsel.

*Christopher L. Krafchek,* U.S. Department of Justice, Washington, DC, with whom were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, and *Jeanne E. Davidson*, Director, for defendant.  *Andrew Bramnick* and *Marina Kozmycz*, Arlington, VA, of counsel.

*Philip J. Davis*, Washington, DC, for defendant-intervenor.  *Rand L. Allen*, *Craig Smith*, *Benjamin J. Kohr*, Washington, DC, of counsel.

**O P I N I O N**

**FIRESTONE**, *Judge*

This bid protest case arises from a solicitation issued by the Washington Headquarters Services ("WHS" or the "agency"), a U.S. Department of Defense ("DOD") Field Activity, for a contract to procure various security services to protect DOD sites within the National Capital Region ("NCR"). In this bid protest action brought pursuant to 28 U.S.C. § 1491(b)(1), the plaintiff, G4S Technology CW LLC ("G4S"), an unsuccessful bidder, claims that WHS acted arbitrarily and capriciously or otherwise contrary to law when it concluded that G4S's proposal did not meet the solicitation's "minimum requirements" and awarded the contract to the defendant-intervenor, M.C. Dean, Inc. ("M.C. Dean").

Pending before the court is G4S's motion for judgment on the administrative record. G4S seeks declaratory and injunctive relief. The United States (the "government") has moved to dismiss G4S's complaint under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject-matter jurisdiction on the grounds that G4S does not have standing to bring this action. M.C. Dean as intervenor has also moved for dismissal under RCFC 12(b)(1). Both the government and M.C. Dean move in the alternative for judgment on the administrative record pursuant to RCFC 52.1. Oral argument was held on February 20, 2013.

For the reasons set forth below, the court holds that it has subject-matter jurisdiction over G4S's claim and thus denies the government's and M.C. Dean's motions to dismiss. The court further finds on the merits that WHS's decision finding that G4S's

proposal failed to meet the solicitation's "minimum requirements" was not arbitrary, capricious, or contrary to law.  Therefore, G4S was properly excluded from further evaluation and WHS's contract award to M.C. Dean must be upheld.

I.    **Statement of Facts**

    A.    **The solicitation.**

        1.    **Scope of work.**

The facts in this case are undisputed and are set forth in the Administrative Record ("AR") and the parties' briefing.  On December 1, 2011, WHS held an industry day to provide an introduction and preliminary information about the "Integrated Security Services Contract" ("ISSC").  AR 37.  The agency intended to provide a single contract award for work related to Security Intrusion Detection Systems, Access Control Systems, Closed Circuit Television Systems and additional security-related systems under the Pentagon Force Protection Agency Security Services Directorate and Project Integration Directorate.  Id.  As stated, the security work focused on various DOD-owned buildings around the NCR, which includes the District of Columbia and parts of Virginia and Maryland.  AR 334.  The contract would also require the awardee to repair "all currently installed equipment as well as future equipment installed in contract, to include: turnstiles, locks (maglocks and electrified mortise locks), card readers, cameras, ACS/IDS panels, etc."  AR 73.

The agency issued solicitation number HQ0034-12-R-0006 ("the solicitation") on December 23, 2011.  AR 93-166.  According to the Performance Work Statement ("PWS") attached to the solicitation, the awardee would provide service and maintenance

on existing, new, and upgraded systems and subsystems.  AR 334-36.  The awardee

would also manage and operate a range of security systems.  Id.  The awardee was to

provide a "total system approach to automating and improving the physical security

system used to protect Department of Defense sites within the National Capital Region."

AR 334.  The solicitation covered approximately 120 buildings including the Pentagon

and the Mark Center, a DOD office complex located in Alexandria, Virginia.  AR 338-

39.

The solicitation divided the work into separate Contract Line Items ("CLINs").

CLIN 0001 covered system support, CLIN 0002 covered installations, CLIN 0003

covered preventative maintenance, CLIN 0004 covered repair, and CLIN 0005 covered

logistics support.  AR 94-98.  Each CLIN further subdivided its associated activity into

one base year and four option year periods (i.e. CLIN series 1001-4001).  Id.  The

solicitation required that all CLINs be submitted as a firm fixed price.  AR 94-118.

The solicitation required the selected bidder to provide "all post installation

services and equipment necessary to maintain the installed system . . . in an operational

state."  AR 398.  It stated that this "warranty period shall be for one (1) year or the length

of the Original Equipment Manufacturer's warranty whichever is greater."  Id.  It also

provided certain requirements for senior personnel.  For instance, it required that the

Program Manager have at least three consecutive years of experience in installation and

support service of "campus wide" types of security systems.  AR 364.  The solicitation

also required that the proposed "Senior Systems Administrator must also have an IAT

level II certification and applicable Computing Environment Certification as defined in appendix 3 of DOD 8570.0-M."[1]  AR 365.

### 2.   Basis of award.

The solicitation explained that the "contract award will be made to the responsible offeror whose offer, in conforming to this solicitation provides the overall best value to the Government. . . ."  AR 624.  It further stated that WHS's "objective is to obtain the highest technical quality considered necessary to achieve the project objectives with a realistic and reasonable cost."  Id.  The solicitation rooted WHS's evaluation of the proposals in five factors of descending importance:  Factor 1, Management; Factor 2, Integrated Logistics Support Program[2] ("ILS"); Factor 3, Past Performance; Factor 4, Small Business Plan; and Factor 5, Price.  AR 624.  The solicitation provided that the first four factors are "significantly more important" than the fifth factor, price.  Id.  It further noted that price will become more important as the factors "become more equal." Id.  The agency rated the Management, ILS, and Small Business Plan factors (Factors 1, 2, and 4) using the same adjectival rating scale, assigning one of five categories

---

[1] An IAT Level II certification, as defined by DOD, requires at least three years of experience with information assurance ("IA") technology or a related area.  See DOD 8570.01-M, Appx. 3, available at http://www.dtic.mil/whs/directives/corres/pdf/857001m.pdf.  The certification also requires a background investigation, an "IA Baseline Certification," and a "Computing Environment Certification."

[2] The ILS is described in the PWS as a system that "control[s] and monitor[s] the status of all installed equipment using an automated system."  AR 345.  The solicitation required that the contractor develop, deploy, and maintain the system.  Id.  Additionally the contractor must "use an automated program, which shall track, and control all documentation associated with the [security] program."  Id.

depending on strengths and weaknesses determined from the proposals.[3]  AR 627.  The

solicitation also provided that a "determination of 'Unacceptable' renders the entire

proposal unacceptable and therefore will NOT be considered for award."  Id.  Therefore,

given the definition for "Unacceptable," one deficiency would render a proposal

ineligible for award.  For Factor 3, Past Performance, WHS evaluated the offerors'

performance using two sub-factors: "Relevancy"[4] and "Confidence."[5]  AR 627-28.

---

[3] The five adjectival ratings for Factors 1, 2, and 4 in descending order are:

| | |
|---|---|
| Outstanding: | Proposal meets requirements and indicates an exceptional approach and understanding of the requirements.  Strengths far outweigh any weaknesses.  Risk of unsuccessful performance is very low. |
| Good: | Proposal meets requirements and indicates a thorough approach and understanding of the requirements.  Proposal contains strengths, which outweigh any weaknesses.  Risk of unsuccessful performance is low. |
| Acceptable: | Proposal meets requirements and indicates an adequate approach and understanding of the requirements.  Strengths and weaknesses are offsetting or will have little or no impact on contract performance.  Risk of unsuccessful performance is no worse than moderate. |
| Marginal: | Proposal does not clearly meet requirements and has not demonstrated an adequate approach and understanding of the requirements.  The proposal has one or more weaknesses, which are not offset by strengths.  Risk to unsuccessful performance is high. |
| Unacceptable: | Proposal does not meet requirements and contains one or more deficiencies.  Proposal is unawardable. |

AR 627.

[4] The adjectival ratings for "Relevancy" in descending order are:

| | |
|---|---|
| Very Relevant: | Present/past performance effort involved essentially the same scope and magnitude of efforts and complexities this solicitation requires. |

Finally, the solicitation called for WHS to evaluate Factor 5, Price, for realism and reasonableness and to determine whether the price reflected a clear understanding of the requirements consistent with the methods of performance described in the proposals.  AR 628.  The agency reserved the right to reject proposals whose prices were determined to be unrealistically high or unrealistically low.  Id.  The solicitation further provided that,

| | |
|---|---|
| Relevant: | Present/past performance effort involved similar scope and magnitude of effort and complexities this solicitation requires. |
| Somewhat Relevant: | Present/past performance effort involved some of the scope and magnitude of effort and complexities this solicitation requires. |
| Not Relevant: | Present/past performance effort involved little or none of the scope and magnitude of effort and complexities this solicitation requires. |

AR 627.

[5] WHS used the following ratings to determine the "Confidence" sub-factor for the "Past Performance" Factor:

| | |
|---|---|
| Substantial Confidence: | Based on the offeror's recent/relevant performance record, the Government has a high expectation that the offeror will successfully perform the required effort. |
| Satisfactory Confidence: | Based on the offeror's recent/relevant performance record, the Government has a reasonable expectation that the offeror will successfully perform the required effort. |
| Limited Confidence: | Based on the offeror's recent/relevant performance record, the Government has a low expectation that the offeror will successfully perform the required effort. |
| No Confidence: | Based on the offeror's recent/relevant performance record, the Government has no expectation that the offeror will successfully perform the require effort. |
| Unknown Confidence: | No recent/relevant performance record is available or the offeror's performance record is so sparse that no meaningful confidence assessment rating can be reasonably assigned. |

AR 627-28.  The solicitation further provided that a "determination of 'No Confidence' renders the entire proposal unacceptable and therefore will not be considered for award."  AR 627.

in terms of pricing, "[c]ompliance with these instructions is mandatory and failure to

comply may result in rejection of your proposal."  AR 620.  The solicitation instructed

offerors to divide their price proposals (Factor 5) into separate volumes apart from the

technical and past performance Factors.  AR 620.

As an overarching consideration for the evaluation, WHS initially provided in

section M.1 of the solicitation that:

> The Government will consider a proposal to be eligible for award only if
> the offer/proposal satisfies all of the following elements, which will be
> evaluated on a pass/fail basis:
>
> - The offeror unconditionally accepts the terms and conditions of the
>   RFP.  Offerors cannot redline or condition proposals.

AR 161.  The language of section M.1, however, was subsequently amended[6] to provide
in relevant part:

> The Government will evaluate a proposal ONLY IF the offer/proposal
> satisfies all of the following elements, which will be evaluated on a
> pass/fail basis[]:
>
> - The offeror unconditionally accepts the terms and conditions of the
>   RFP.
> - The offeror submits all required information specified in the RFP[.]

AR 623 (emphasis in original).  In the amended solicitation, WHS removed the language

relating to redlining or conditioning terms in the proposals, but continued to require that

---

[6] Throughout the course of the solicitation period, WHS issued a series of amendments to the
original solicitation.  The first amendment, issued on January 12, 2012, corrected the issue date
to December 23, 2011 and extended the time for receipt by ten days to noon on January 27,
2012.  See AR 610-28.  It also changed the description for certain CLINs, deleted a sub-section
from Section I, made changes to Sections L and M, addressed certain questions, and provided
more specific information for pricing.  Id.  A second amendment issued on January 19, 2012
addressed questions from the first amendment and added commercial terms.  See AR 629-57.  A
third amendment issued the next day answered additional questions.  See AR 658-83.

offerors "unconditionally" accept the terms and conditions of the RFP.  Moreover,

offerors were required to submit all requested information in order to ensure that WHS

would evaluate the proposal.  The agency reinforced the unconditional nature of this term

in the third amended solicitation through publication of the following exchange between

WHS and an offeror:

> QUESTION 4: [] Will the government remove the requirement that an offeror unconditionally accept the terms and conditions?

> ANSWER 4: See M.1

AR 673.

Importantly, the solicitation further noted that offerors were to submit sufficient

information because "[t]he government intend[ed] to award without discussions with

respective offerors."  AR 624.  The agency did, however, "reserve[] the right to conduct

discussions if deemed, by the Contracting Officer, to be in the best interest of the

Government."  Id.  WHS further provided that offerors "may be asked to clarify certain

aspects of their proposal" and that "[c]ommunication conducted to resolve minor or

clerical errors will not constitute discussions and the Contracting Officer reserves the

right to award a contract without the opportunity for proposal revision."  Id.

**B.     Proposals, evaluations, and M.C. Dean's initial selection.**

Six offerors submitted proposals in response to the solicitation.  AR 1588.  * * *.

AR 1887-88.  * * * was the * * *.  AR 45.  G4S submitted a proposed price of * * *.  AR

1877.  The price proposal incorporated certain "assumptions" made by G4S.  AR 888-89,

890-91, 894-95, 898-99, 902.  For instance, in regard to work performed at the Mark

Center, G4S stated in connection with CLINs 0001 (Systems Support), 0003

(Preventative Maintenance), and 0004 (Repair) that:

> \* \* \*.

AR 889, 895, 899.  G4S's included other "assumptions" or exclusions for CLINs 0003

(Preventative Maintenance) and 0004 (Repairs) stating that 1) " \* \* \* ."  AR 898.  For

CLIN 005, ILS, G4S's proposal assumed that existing data would " \* \* \* " and that the

proposal " \* \* \* "  AR 902.  G4S, at multiple points in its proposal, stated that it "has

reviewed the Terms and Conditions and has no exceptions."  AR 684, 686, 764, 766.

In its Price Evaluation Memorandum ("Evaluation Memorandum"), WHS noted

that while G4S's proposed re-evaluation of the Mark Center work after the base year

"leaves open the possibility for either an upward or downward adjustment, the evaluators

considered the rationale for including this assumption was most likely to open the

potential for an upward adjustment."  AR 1571.  The Evaluation Memorandum concluded

that with respect to the Mark Center work, G4S's assumption was essentially a

proposition to "re-negotiate the contract[']s option years" and that "this is a firm-fixed

price contract, and accepting this assumption would not be consistent with a fixed priced

arrangement."  Id.  The Evaluation Memorandum also noted G4S's exclusion of certain

work including the \* \* \*.  AR 1571-72.  Importantly, the Evaluation Memorandum

underscored that G4S "made several incorrect assumptions . . . which could only be

overcome if discussions were held and the contractor was given the opportunity to revise

their proposal."  AR 1571.

On March 8, 2012, after receiving the proposals, WHS sent M.C. Dean a letter

with the subject heading "Solicitation No. HQ0034-12-R-0006, Integrated Security

Systems, Clarifications."  AR 1493.  In its two-page letter, WHS "[r]equest[ed]

clarification" on two issues.  Id.  First, it asked whether the proposed Senior Systems

Administrator, * * *, met the IAT Level II certification and applicable Computing

Environment Certifications required in the solicitation.  Id.  The letter noted that a

"review of the resume of the Senior Systems Administrator [* * *] does not list the IAT

Level II certification required by the PWS."  Id.  After quoting the relevant paragraph

from the solicitation,[7] the letter inquired:

> Does Mr. * * *, the proposed Senior Systems Administrator, meet the
> required IAT Level II certification and applicable Computing Environment
> Certifications as defined in appendix 3 of DOD 8570.01-M?

Id.  Second, WHS sought to clarify whether M.C. Dean provided a warranty for the

greater of one year or the length of the Original Manufacturers warranty as required by

---

[7] The letter quoted language from the PWS defining the requirements for the Senior Systems
Administrator:

> Senior Systems Administrator
> PWS para 3.1.2.3.1.6 states that:
> "The Senior Systems Administrator shall have a minimum of an associate's
> degree or 5 years of experience in systems administration/systems engineering.
> The Senior Systems Administrator must have an IAT level II certification and
> applicable Computing Environment Certification as defined in appendix 3 of
> DOD 8570.01-M.  The Senior Systems Administrator shall be the Access Control
> Center (ACC) and Network Control Center (NCC) team leader and apply detailed
> problem solving techniques to any computer system malfunction while serving as
> the technical consultant for computer problems beyond the knowledge of junior
> support staff.  Incumbent must obtain and be able to maintain TS/SCI access
> while employed in this duty position. . . ."

AR 1493 (emphasis added).

the solicitation.  Id.  Again, it quoted the relevant paragraph[8] from the solicitation and then reproduced the paragraph from M.C. Dean's proposal describing its offered warranty:

> * * *.

AR 1494.  In its letter, WHS then asked:

> Will M.C. Dean provide a warranty period for one (1) year or for the length of the Original Equipment Manufacturers warranty whichever is greater for all post installation Services and Equipment?

Id.

The following day, March 9, 2012, M.C. Dean responded via letter that the proposed Senior Systems Administrator had the requisite certifications and that M.C. Dean would provide the necessary warranties.  AR 1495-96.  M.C. Dean's response letter restated each of WHS's clarifications and stated its response for each.  Id.  For its first response, M.C. Dean stated:

---

[8] The letter quoted language from the PWS defining the warranty requirement:

> Warranty:
> PWS 3.5.3
> "The Contractor shall provide all post installation services and equipment necessary to maintain the installed system equipment and software in an operational state.  The warranty period shall be for one (1) year or for the length of the Original Equipment Manufacturer's warranty whichever is greater.  The warranty period shall begin after formal written acceptance of the system.  All system software shall be placed in an independent escrow source with yearly updates provided by the Contractor.  Tracking all installed equipment by make, model, serial number, location, date installed, date accepted, and anticipated life cycle replacement shall be an integral part of the warranty and maintenance plans[."]

AR 1494 (emphasis added).

> YES – Mr. * * * exceeds the minimum professional experience criteria for three years and meets the requirement for IAT Level II certification and applicable Computing Environment Certifications as defined in Appendix 3 of DOD 8570.01-M.

AR 1495.  M.C. Dean then listed the information it included in Mr. * * *'s resume in its proposal to demonstrate that the information met all the requirements necessary for the required certification.  AR 1495-96.  M.C. Dean's response to WHS's second question affirmed its intent to provide the required warranty:

> YES – M.C. Dean will provide a warranty period of one year or for the length of the Original Equipment Manufacturers warranty, whichever is greater, for all post installation Services and Equipment.

AR 1496.  WHS did not seek clarifications from any of the other offerors, nor did it seek discussions with any of the other offerors.[9]

On March 30, 2012, WHS completed its initial evaluations, determining that M.C. Dean's proposal represented the best value to the government.  AR 1592.  In the Source Selection Decision Document, the source selection authority ("SSA") summarized the evaluation for each offeror:

---

[9] The record indicates that several of the other offerors including * * * , but not G4S, also failed to identify whether their proposed Senior Systems Administrators had the required credentials. AR 1797, 1803, 1817, 2699, 2956-57.  Similarly, WHS identified * * * failure to address the warranty period in its proposal as a "deficiency."  AR 1820.  None of these issues was the subject of any communication between the offerors and WHS.

| Offerors | Factor 1 Management | Factor 2 Integrated Logistics Support | Factor 3 Past Performance | Factor 4 Small Business | Factor 5 Price |
|---|---|---|---|---|---|
| [* * *] | Outstanding | Outstanding | Limited Confidence | Good | $70,149,568.96 |
| [* * *] | Unacceptable | Unacceptable | Limited Confidence | Good | $42,640,535.46 |
| [* * *] | Unacceptable | Unacceptable | Satisfactory Confidence | Good | $56,987,353.00 |
| [M.C. Dean] | Outstanding | Outstanding | Substantial Confidence | Good | $53,219,247.87 |
| [G4S] | [* * *] | [* * *] | [* * *] | [* * *] | [* * *] |
| [* * *] | Unacceptable | Unacceptable | Satisfactory Confidence | Acceptable | $83,464,466.25 |

AR 1590.  After considering this information, the SSA performed an independent comparative assessment and trade-off of the offerors' specific strengths and weaknesses. AR 1591.  The SSA noted that * * * each received at least one Unacceptable rating, resulting in their removal from consideration pursuant to solicitation terms.  Id.  When comparing M.C. Dean to the remaining two offerors, * * * and G4S, the SSA noted that M.C. Dean had higher adjectival ratings as well as the lowest price.  AR 1591-92.  In regard to G4S's pricing assumptions, the SSA concluded that "it is likely that the actual cost differences between the two proposals [G4S's and M.C. Dean's] would be higher than the evaluated price difference."  AR 1592.  On the basis of its adjectival ratings and cost, when compared to the remaining two competitors, the SSA concluded that M.C. Dean's proposal represented the best value to WHS and selected it for the contract award. Id.

      **C.**       **Protests, G4S's debriefing, and WHS's corrective action.**

On April 10, 2012, * * * filed a bid protest with the Government Accountability Office ("GAO").  AR 1671.  Among its protest grounds, * * * contended that WHS failed to provide * * * the opportunity to respond to adverse past performance ratings.  AR 1688.  The next day, on April 11, 2012, WHS provided G4S with a debrief explaining the evaluation.  AR 1729-81.  The debriefing materials stated that "[o]fferors that take exception to any performance criteria are unacceptable" specifically noting the aforementioned assumptions.  AR 1737, 1778-79.  On April 16, 2012, G4S filed an agency-level protest against the award, objecting to WHS's price evaluation and arguing that the assumptions could in fact lead to a lower price.  AR 1782-83 (stating that the "assumptions identified by G4S could just as likely have the effect of reducing the difference in price, especially in connection with the Mark Center, which is a new building with new systems.").

On April 30, WHS informed the GAO that WHS intended to take corrective action by re-evaluating the past performance for all offerors.  AR 1784.  The agency noted that the corrective action would not, however, be limited to re-evaluation of the offerors' past performance.[10]  Id.  On May 8, 2012 WHS alerted G4S that G4S's agency-level protest was mooted by the corrective action taken in response to * * * protest.  AR 1822.

**D.    WHS's Re-evaluation.**

---

[10] WHS also reexamined its Independent Government Cost Estimate ("IGCE") because the original estimate included only historical data, which were provided by * * * under its incumbent contract.  AR 1838, 1859.  In an extensive review of other similar contracts reflecting more recent market conditions, WHS calculated an "adjusted" IGCE for purposes of the second price evaluation.  Id.  The agency calculated the initial IGCE as * * * and calculated the adjusted IGCE as * * *.  Id.

The agency re-evaluated all of the factors and sub-factors, eventually changing * * * past performance rating from "Limited Confidence" to "Satisfactory Confidence." AR 1887. It did not revise any other adjectival ratings for any other offeror. Id. The agency did, however, eliminate one of G4S's weaknesses and added a strength under the Management Factor, resulting in 9 strengths and 1 weakness, but elected not to alter the associated adjectival rating. AR 1891.

In its re-evaluation, WHS reconsidered G4S's price proposal taking special note of G4S's price "assumptions" in its Price Evaluation Memorandum ("second price evaluation"). AR 1877-79. In regard to the Mark Center assumption, WHS found that the post-base year review "makes [G4S's] price subject to adjustments and therefore not a firm fixed price." AR 1878. The second price evaluation further concluded that the Mark Center assumption is, once again, a proposition to "re-negotiate the contract[']s option years . . . ." AR 1880. For the rooftop and confined spaces work, WHS concluded that "some of the preventative maintenance would have to be covered in non-priced portions of CLIN 0002 resulting in an increase in the risk and cost." AR 1879. Additionally WHS expressed concern about the "potential for an increase in risk and cost after the contract award" in regards to G4S's database assumption. AR 1879. The agency noted in the second price evaluation that "all Offerors were told that this will be a firm-fixed price contract, and that accepting any assumptions would not be consistent with a fixed price arrangement." AR 1880. It concluded that "[t]his was inconsistent with the Request for Proposal" ("RFP") and "the reasonableness and realism of [G4S's] price cannot be validated and is determined not to be reasonable." Id.

16

In the second source selection decision memorandum, dated August 28, 2012, the SSA agreed with the second evaluation and concluded, based on the concerns identified above, that G4S's proposal did not meet the solicitation's "minimum requirements" and that the proposal would "require no further consideration with respect to any cost/technical trade-offs." AR 1889.  Because G4S was removed from further consideration, it was not compared head-to-head with M.C. Dean.  M.C. Dean, following the re-evaluation, remained the highest rated and lowest-priced acceptable offeror and was once again awarded the contract.  Id.  G4S brought another bid protest first to the GAO and then filed this claim in the U.S. Court of Federal Claims.  While the matter was pending before the GAO, WHS overrode the automatic stay.  M.C. Dean has begun performance of the contract.  Pl.'s Ex. I, ECF No. 1-10.

## II.     The Government's and M.C. Dean's Motions to Dismiss

### A.      Standard of review.

As noted above, the government and M.C. Dean both argue that G4S lacks standing to bring this bid protest and move to dismiss pursuant to RCFC 12(b)(1).  The standard of review for a motion to dismiss for lack of subject-matter jurisdiction is well settled.  The plaintiff must bear the burden of establishing subject-matter jurisdiction.  Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  When considering a motion to dismiss for lack of subject-matter jurisdiction, the court assumes the facts alleged in the complaint to be true.  Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  Similarly, the court must draw all reasonable inferences in the plaintiff's favor.  Anaheim

Gardens v. United States, 444 F.3d 1309, 1314-15 (Fed. Cir. 2006). However, if a

motion to dismiss challenges the jurisdictional facts alleged in the complaint, the court

may consider evidence to resolve the dispute. Reynolds v. Army and Air Force

Exchange Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

**B.   This court possesses subject-matter jurisdiction over G4S's claim.**

The jurisdictional grant for the U.S. Court of Federal Claims to hear bid protests is

found under 28.U.S.C. § 1491(b)(1), which provides that this court

> shall have jurisdiction to render judgment on an action by an interested
> party objecting to a solicitation by a Federal agency for bids or proposals
> for a proposed contract or to a proposed award or the award of a contract or
> any alleged violation of statute or regulation in connection with a
> procurement or a proposed procurement.

Id. The "pivotal element" of this court's subject-matter jurisdiction, therefore, is

"whether a protestor qualifies as an 'interested party'" under the statute. RhinoCorps

Ltd. Co. v. United States, 87 Fed. Cl. 481, 485 (Fed. Cl. 2009). The Federal Circuit has

stated that "an interested party is an actual or prospective bidder whose direct economic

interest would be affected by the award of the contract." Orion Tech., Inc. v. United

States, No. 2012-5062, 2013 WL 141740 at *3 (Fed. Cir. 2013) (citing Rex Serv. Corp. v.

United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006)). The Orion court has further stated

that "a party must show 1) that it is an actual or prospective bidder and 2) that it has a

direct economic interest." Id.

Since there is no dispute that G4S is an actual bidder and thus satisfied the first

prong of the interested party test, the dispute in this case centers on whether G4S has the

required "direct economic interest." In Orion, the Federal Circuit confirmed that in order

for a disappointed bidder to prove a direct economic interest in a post-award protest, the party must show a "substantial chance" of winning the contract. 2013 WL 141740 at *3. However, the <u>Orion</u> court clarified that there may be circumstances where a bidder that has been "excluded" from further agency consideration may have standing to sue. <u>Id.</u> at *4. Specifically, the Federal Circuit examined whether a bidder has standing where it claims that the agency abused its discretion by excluding the bidder from the competition.

In <u>Orion</u>, the agency excluded Orion from consideration on the grounds that Orion had failed to submit a complete bid proposal. <u>Id.</u> at *1. In the solicitation at issue, the agency was given discretion to eliminate a proposal from consideration for noncompliance with the solicitation's terms. <u>Id.</u> The solicitation stated that the agency "may" eliminate proposals from consideration for noncompliance. <u>Id.</u> The solicitation also provided that the agency may award a contract without holding discussions. <u>Id.</u> Orion apparently omitted propriety cost information from its initial proposal submission, only submitting the necessary data eight days after the close of the solicitation period. <u>Id.</u> The agency returned the late information on the grounds that it was untimely and subsequently rejected Orion's proposal on the grounds that the agency could not complete its review without the required data. <u>Id.</u> at *2. After excluding Orion, the agency issued an amendment to the solicitation notifying offerors that the agency would hold discussions. It also sought new cost/price proposal from qualifying offerors. <u>Id.</u> Upon learning of the amendment to the solicitation, Orion attempted to resubmit its cost/price proposal; however, the agency rejected the proposal, this time on the grounds that Orion had been eliminated from the competition. <u>Id.</u>

On appeal, the Federal Circuit held that Orion had standing to challenge its initial exclusion from the competition, noting that the solicitation provided the agency with discretion to decide whether to exclude offerors and that the exclusion was not mandatory.  Id. at *4.  The Circuit held that, where the agency had discretion to consider a proposal for award and but for the discretionary decision to exclude, the offeror would have had a "substantial chance of succeeding if discretion [had been] exercised in its favor, jurisdiction lies to test whether the exercise of discretion against the offeror is lawful."  Id. at *5 n.1.  The Circuit concluded that "[t]o deny Orion standing would effectively prevent any challenge to a discretionary decision of the [agency]."  Id.

Here, G4S argues that the agency had discretion to hold discussions and that it, like the plaintiff in Orion, G4S would have had the opportunity to cure its proposal's deficiencies and be considered for final award had the agency conducted discussions. G4S argues that the issue of standing is more pressing in this case than in Orion because G4S asserts that WHS conducted "discussions" with M.C. Dean and was therefore obligated to conduct discussions with G4S.

The government and M.C. Dean seek to distinguish Orion, noting that the solicitation here provides that proposals would be considered "ONLY IF the offer/proposal satisfies all of the [solicitation's] elements," whereas the solicitation at issue in Orion provided that "[f]ailure to meet a requirement may result in an offeror being ineligible for an award."  2013 WL 141740 (quotations omitted) (emphasis added). M.C. Dean and the government contend that the language here mandated G4S's exclusion rather than providing mere discretion to do so.  In this way, they seek to cabin

Orion's applicability only to discretionary acts associated with a solicitation's overarching "gate keeping" language. According to the government, the use of the word "may" in the Orion solicitation limits Orion's application to cases where potentially disqualifying deficiencies do not mandate exclusion.

The court holds that this case falls within the parameters set forth in Orion and that G4S has standing. The Orion court sought to preserve standing to challenge "a discretionary decision" regarding exclusion from consideration where a plaintiff otherwise would have had a "substantial chance of receiving the contract." 2013 WL 141740 at *4-*5. Although the Orion court focused on the discretionary nature of the word "may," the Orion decision does not turn on the use of a particular magic word or phrase. Rather, the court reads Orion to mean that a bidder has standing to challenge the lawfulness of discretionary acts that operate to exclude the bidder from consideration in cases where the bidder's ratings are such that had the government acted lawfully the bidder would have had a substantial chance of winning the contract. Here, under the terms of the solicitation, WHS reserved discretion to hold discussions. If discussions were conducted with one offeror, discussions should have been held with each offeror that was effectively in the competitive range. See FAR § 15.306(d)(1).[11] Assuming the

---

[11] FAR § 15.306(d)(1) provides: "Discussions are tailored to each offeror's proposal, and must be conducted by the contracting officer with each offeror within the competitive range."

Here, neither party argues and the record does not indicate that WHS officially established a competitive range for the purposes of conducting discussions. For consideration of G4S's standing argument, the court will assume that G4S had been or would have been in the competitive range in this case. The record indicates that WHS conducted a comparative assessment including G4S during the first round of consideration. AR 1590. G4S was among only three offerors that did not receive an "Unacceptable" adjectival rating. Id. In its Source

communications between WHS and M.C. Dean constituted discussions, WHS's failure to conduct discussions with G4S at that time would have impermissibly precluded G4S from award.[12]  Put another way, at issue in this case is whether WHS effectively and impermissibly denied G4S the same opportunity to cure its proposal's deficiencies as it provided M.C. Dean.  Where, as here, the agency elected to enter into communications with one offeror and the record indicates that the eventual winner received the benefit of alleged discussions and the plaintiff had similar ratings and offered comparable prices, the plaintiff has standing, at a minimum, to challenge the merits of the agency's decision not to conduct discussions with the plaintiff.

It is for these reasons that the court rejects the government's contention that this case is controlled by Comint Systems v. United States, 700 F.3d 1377, 1384 (Fed. Cir. 2012), wherein the Federal Circuit held that a bidder excluded from consideration lacked standing on the grounds that it lacked a substantial chance for award.  In Comint, a bidder eliminated from the competition challenged its ratings and argued that the government's evaluation of its proposal was flawed.  A review of the complaint revealed however, that even if the ratings identified were "fixed," the plaintiff still would have been outside the

---

Selection Decision Memorandum, the SSA directly compared G4S and * * * to the eventual winner, M.C. Dean, while giving "no further consideration" to the remaining three bidders.  AR 1591-92.  On these facts, the court will assume G4S would have been in the competitive range had WHS established one for the purposes of holding discussions.

[12] The court acknowledges that the communications that G4S alleges to be discussions occurred during the first round of consideration prior to * * *'s bid protest before the GAO.  If the communications were discussions and G4S had been afforded the opportunity to "cure" its proposal deficiencies in the first round when discussions would have been held, WHS would have considered the newly amended proposal without those same deficiencies that eventually led to the second round disqualification.  That is, the basis for WHS's removal of G4S in the second round of review allegedly would have been eliminated in the first round.

range of reasonable consideration.  In such circumstances, the Circuit concluded, the

plaintiff lacked standing on the grounds that it did not have a substantial chance of

receiving the award.  Id.  Here, in contrast to Comint, G4S clearly had a technical rating

and price that would have led to consideration had the proposal not been rejected.  G4S's

offer was more than $16 million less than * * * and within a few percentage points of

M.C. Dean's offer.  AR 1590.  As demonstrated in the facts, all of G4S's technical

ratings were fairly close to those of M.C. Dean's.  Moreover, G4S argues that if the court

reviews the merits, it may conclude that M.C. Dean should have been excluded from

consideration.  If that were the case, G4S not only would have had a substantial chance in

winning, but also would very likely have been "next in line" for the award.[13]  See

Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334

(Fed. Cir. 2001) (noting that a second place bidder has a direct economic interest in the

contract award).  Because, unlike the plaintiff in Comint, G4S would have a substantial

chance at award if the agency were to have had discussions with G4S, this case is not

controlled by Comint.  700 F.3d at 1383-84; see also Orion, 2013 WL 141740 at *5 n.1.

   In concluding that G4S has standing, the court echoes the concerns expressed by

the Federal Circuit in Orion regarding the limitations of this holding.  2013 WL 141740

at *5.  Where, as here, the agency reserved discretion to conduct discussions and elected

---

[13] Aside from M.C. Dean and G4S, the only remaining offeror at the time of the first evaluation
was the incumbent, * * *.  * * * and G4S had similar ratings but * * * pricing was substantially
higher than the other two remaining bidders.  While the government argues that * * * was "next
in line," the record demonstrates that either G4S or * * * could reasonably have made that claim.
G4S notes that * * * filed a post-award bid protest with the GAO and has since settled,
withdrawing its protest in the process.  Pl.'s Resp. at 5 n.2, ECF No. 43.

to make inquiries to one offeror (when others were included or likely would have been included in the competitive range) but not to other offerors and the plaintiff alleges based on facts in the administrative record that it would have had a substantial chance to win the contract had the agency conducted discussions, the court finds that the plaintiff has standing at a minimum to challenge the nature of the communications and the agency's related decision not to conduct discussions with plaintiff.  As such, the court finds it possesses subject-matter jurisdiction.  The government's and M.C. Dean's motions to dismiss are therefore **DENIED**.

### III.    Cross-Motions for Judgment on the Administrative Record

#### A.    Standard of review.

Having found that G4S has standing to bring its bid protest, the court will now turn to G4S's contention that WHS erred in failing to conduct discussions and in eliminating G4S from consideration for award.  Under RCFC 52.1, the court determines whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.  Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005).  In a bid protest, the court's review is limited to the facts contained in the administrative record.  RCFC 52.1.

The Federal Circuit has held that the Administrative Procedure Act ("APA") provides the proper standard for claims brought under 28 U.S.C. § 1491(b)(1).  Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004).  That is, "a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Id. (quoting 5 U.S.C. §

706(2)(A)).  A bid award may be set aside only if 1) the procurement official's decision

lacked a rational basis or 2) the procurement involved a violation of regulation or

procedure.  Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir.

2009).  When applying this standard, the Federal Circuit explained:

> A court evaluating a challenge on the first ground must determine whether
> the contracting agency provided a coherent and reasonable explanation of
> its exercise of discretion.  When a challenge is brought on the second
> ground, the disappointed bidder must show a clear and prejudicial violation
> of applicable statutes or regulations.

Id. (quoting Garufi, 238 F.3d at 1332-33) (internal quotation omitted).  "The scope of

review under the 'arbitrary and capricious' standard is narrow and a court is not to

substitute its judgment for that agency."  Motor Vehicles Mfrs. Ass'n v. State Farm Mut.

Auto Ins. Co., 463 U.S. 29, 43 (1983); Ala. Aircraft Indus., Inc.-Birmingham v. United

States, 586 F.3d 1372, 1375 (Fed. Cir. 2009).  Procurement decisions "invoke[] highly

deferential rational basis review."  Weeks Marine, Inc. v. United States, 575 F.3d 1352,

1368-69 (Fed. Cir. 2009) (internal quotation and citations omitted).

### B.    WHS's decision to exclude G4S from the procurement was not arbitrary, capricious, an abuse of discretion, or contrary to law.

While G4S makes a series of arguments contending that WHS's decision to award

the contract to M.C. Dean was arbitrary, capricious, an abuse of discretion, or contrary to

law, this case can be decided on relatively few issues.  The two primary issues are 1)

whether WHS's communications with M.C. Dean constituted a "discussion" as defined

under the Federal Acquisition Regulation ("FAR"), and assuming the communications

with M.C. Dean were not discussions 2) whether WHS abused its discretion or was

arbitrary and capricious in electing to exclude G4S from the competition.

> **1.     The written communications between WHS and M.C. Dean
> constitute requests for "clarifications," which did not obligate
> WHS to engage in "discussions" with G4S.**

As noted above, the core of G4S's argument is its contention that WHS treated the

offerors unequally and unfairly, favoring and leading to the selection of M.C. Dean.

Specifically, G4S contends that the communication between WHS and M.C. Dean, which

gave M.C. Dean the opportunity to fill supposed gaps in its proposal, amounted to

discussions with M.C. Dean rather than clarifications.  If this were the case, according to

G4S, the agency was obligated under the FAR to engage in discussions with the other

offerors including G4S to allow them also to have the opportunity to "fix" their

proposals.  FAR § 15.306(d)(1); Afghan Am. Army Servs. Corp. v. United States, 90

Fed. Cl. 341, 361 (2009) (citing Info. Tech. & Applications Corp. v. United States, 316

F.3d 1312, 1318 (Fed. Cir. 2003) ("ITAC")).  As such, G4S contends that it must be

afforded such an opportunity.

Specifically, G4S argues that the March 8-9, 2012 letter exchange between WHS

and M.C. Dean, quoted in the statement of facts above, constituted discussions "because

the result was that M.C. Dean was subsequently permitted to cure a proposal

'deficiency.'"  Pl.'s Mot. JAR at 18, ECF No. 31.  In support of this argument, G4S relies

on Int'l Res. Recovery, Inc. v. United States, which states:

> Clarifications are not to be used to cure proposal deficiencies or material
> omissions, materially alter the technical or cost elements of the proposal or
> otherwise revise the proposal. . . . Discussions, on the other hand, occur

> when a contracting officer indicates or discusses with each offeror still
> being considered for award, significant weaknesses, deficiencies, and other
> aspects of its proposal that could be altered or explained to enhance
> materially the proposal's potential for award.

64 Fed. Cl. 150, 162 (2005) (quoting JWK Int'l Corp. v. United States, 52 Fed. Cl. 650,

661 (2002)) (emphasis removed).

Whether the agency conducted discussions with M.C. Dean turns on whether M.C.

Dean's proposal contained "deficiencies" which could only be corrected through

revisions to its proposal.  As discussed above, the solicitation required that the proposed

Senior Systems Administrator meet the IAT Level II certification.  It also required that

the contractor provide a warranty period for software and equipment of at least one year.

M.C. Dean's proposal did not expressly make these assurances.  In the two letters

constituting the exchange, WHS asked and M.C. Dean confirmed that M.C. Dean's

proposed Senior Systems Administrator, Mr. * * *, had the requisite IAT Level II

certification and that M.C. Dean would provide the needed warranty.

G4S contends that the exchange between M.C. Dean and WHS amounted to

discussions because the exchanges provided M.C. Dean the opportunity to "revise" its

proposal to confirm that its Senior Systems Administrator had the required certification

and that it would provide the necessary warranties.  G4S asserts that WHS was aware that

M.C. Dean's proposal had "deficiencies" because WHS specifically determined that other

offerors, including * * *  had "deficiencies" in their proposals because they had failed to

demonstrate that their proposed Senior Systems Administrators had the needed

certification.  AR 1797, 1803, 1817.  Similarly, G4S argues, WHS determined that * * *

proposal contained a deficiency because it did not address a warranty period.  AR 1820.

G4S argues based on these facts that the agency's decision to communicate with M.C.

Dean and no other offeror "constitutes impermissible preferential treatment" and that the

award should be set aside.  Pl.'s Mot. JAR at 20 (citing Ashbritt, Inc. v. United States, 87

Fed. Cl. 344, 372 (2009) ("The Government may not inform some offerors of a concern

with their pricing level while staying silent with respect to identical issues in other

offerors' proposals.")).

     The government and M.C. Dean argue, in response, that the communications

between WHS and M.C. Dean were not "discussions" within the meaning of the FAR,

which defines "discussions" as:

> Exchanges with offerors after establishment of the competitive range.
> Negotiations are exchanges, in either a competitive or sole source
> environment, between the Government and offerors, that are undertaken
> with the intent of allowing the offeror to revise its proposal.  These
> negotiations may include bargaining.  Bargaining includes persuasion,
> alteration of assumptions and positions, give-and-take, and may apply to
> price, schedule, technical requirements, type of contract, or other terms of a
> proposed contract.  When negotiations are conducted in a competitive
> acquisition, they take place after establishment of the competitive range and
> are called discussions.

FAR § 15.306(d).  Instead, they argue, the communications between WHS and M.C.

Dean sought mere clarifications, which the FAR defines as "limited exchanges, between

the Government and offerors" that give offerors "the opportunity to clarify certain aspects

of proposals. . . or to resolve minor or clerical errors."  FAR §15.306(a)(1)-(2).  They

argue that the reason the proposed Senior Systems Administrator's certifications and

warranties were not identified as "deficiencies" in M.C. Dean's proposal but as

"deficiencies" in other offerors' proposals is because M.C. Dean, in contrast to the others, had addressed the requirement in its proposal but that the proposal was simply not clear. Since the communications constituted clarifications and not discussions, the government and M.C. Dean contend, WHS was not obligated to engage in any "discussions" with G4S under the FAR.

In this case, the court agrees with the government and M.C. Dean that the communications between M.C. Dean and WHS merely sought and provided confirmation of information already present in M.C. Dean's proposal and were therefore not "discussions."  Instead, they were "clarifications."  A close review of the record demonstrates that in contrast to those provided by * * *, the resume M.C. Dean submitted for its proposed Senior Systems Administrator, Mr. * * *, contains all the information necessary for WHS to reasonably conclude that Mr. * * * held the required IAT Level II certification as defined by the DOD.  While not explicitly stating the IAT Level II certification by name, the resume contained all the individual components and background information required to obtain such a certification.  AR 1217-18.  The proposals submitted by * * * and * * * had little or no relevant information for WHS to rely upon as a basis for a mere clarification.  These omissions could only have been remedied through revisions to the proposals afforded by discussion.  Similarly, as reproduced above, the information M.C. Dean provided to WHS regarding its proposed warranty, while not restating the explicit requirements of the solicitation, demonstrated its intent to provide the requisite warranty period.  M.C. Dean's proposal stated that the "* * *."  AR 1494.  WHS's letter sought only to clarify that this language meant that the

manufacturers in providing support would be providing "warranties" as required by the solicitation.  * * *, on the other hand, provided no information related to a proposed warranty period and did not address the relevant paragraph from the PWS.  AR 1820, 1954-55.

In concluding that WHS engaged only in seeking "clarifications" from M.C. Dean, the court also notes that WHS is entitled to deference with regard to its characterization of its communications.  ITAC, 316 F.3d 1323.  Here WHS repeatedly noted in its letter to M.C. Dean that it sought "clarifications" and at no point used the word "discussion."  AR 1493-94.  Indeed, as discussed above, the "term 'discussion' has a specific legal definition: discussions involve negotiations and are undertaken with the intent of allowing the offeror to revise its proposal." Galen Medical Assocs. Inc. v. United States, 369 F.3d 1324, 1332 (Fed. Cir. 2004) (internal quotations and citations omitted).  There is no evidence on the record to suggest that any negotiations took place.  Most importantly, there is no evidence on the record to suggest that M.C. Dean was given the opportunity to revise its proposal.  As discussed above, in its two-page letter to WHS, M.C. Dean merely explained the information already included in its proposal.  Namely, M.C. Dean's letter states that Mr. * * *'s resume demonstrates that he had the requisite IAT Level II certification.  See ITAC, 316 F.3d at 1323 (holding that the agency's request for clarification of subcontractor's relevant experience is only a clarification).  As for the warranty, M.C. Dean's letter explains M.C. Dean's proposal's compliance with the warranty requirements and the requisite warranty period.  The narrow communication as to the offered warranty period does not amount to a revision.

In view of the foregoing, the court finds that WHS had no obligation to engage in discussions with G4S.  As discussed <u>infra</u>, the issues WHS raised with respect to G4S's proposal—1) failure to propose firm-fixed price for the Mark Center work (AR 1878, 1880), 2) failure to offer all required preventative maintenance (AR 1879), and 3) failure to include "manual data input of existing data" (AR 1879)—all would have required G4S to revise its proposal in order to have been considered for award.  In such circumstances, G4S's motion for judgment on the administrative record with regard to its right to correct its proposal through discussions with WHS must be denied.  WHS did not conduct discussions and therefore was not obligated to give G4S the opportunity to revise its proposal to address WHS's concerns.

> **2.    WHS's decision to eliminate G4S from the competition was not arbitrary or capricious.**

Having concluded that G4S did not have a right to engage in discussions with WHS based on the communications WHS conducted with M.C. Dean, the court now turns to whether WHS acted arbitrarily or capriciously in excluding G4S from the competition based on the proposal submitted by G4S.  At issue is whether WHS rationally excluded G4S from the competition because it reasonably concluded that G4S's pricing assumptions and exclusions prevented the agency from determining price reasonableness.

The government and M.C. Dean argue that the decision to eliminate G4S from consideration based on the proposal submitted by G4S was justified since G4S failed to "unconditionally" accept all of the solicitation terms and also excluded certain work from

its proposal.  The government and M.C. Dean point to the amended language of section

M.1 of the solicitation as the basis for WHS's decision.  That section of the solicitation

provided that the agency "will evaluate a proposal ONLY IF the offer/proposal satisfies

all of the following elements" including that the offeror "unconditionally accepts the

terms and conditions of the RFP" and "submits all required information."  AR 623

(emphasis in original).  G4S's pricing assumptions and exclusions, the government and

M.C. Dean argue, constitute a failure to accept unconditionally all of the solicitation's

terms and conditions resulting in rejection of G4S's proposal.  The government and M.C.

Dean identify G4S's suggestion to consider "funding adjustments" for the option periods

in relation to work at the Mark Center as a failure to submit a firm fixed price for that

work.  They make a similar argument for the exclusions associated with the repairs based

on rooftops and in confined spaces for CLINs 0003 (Preventative Maintenance) and 0004

(Repairs).  Lastly, the government and M.C. Dean highlight G4S's qualification that the

existent * * * and that the price excludes * * *.  According to the government and M.C.

Dean, WHS reasonably and rationally excluded G4S from the competition because the

assumptions made by G4S precluded WHS from conducting a proper price

reasonableness and realism determination.

     G4S argues that regardless of any problems with its proposal, WHS improperly

excluded it from the competition based on criteria not contained in the solicitation.  G4S

points to language in a letter it received from WHS after the agency conducted the re-

evaluation:

> Factor V. The Government found several assumptions included in your cost proposal which may add risks and or costs to the government in the resulting contract.  Therefore, these assumptions have rendered your cost proposal unacceptable IAW the solicitation provision M.1.1 which states "Offers that take exception, condition, include assumptions, or redline any performance criteria will be considered unacceptable and ineligible for award."

AR 1891.  G4S asserts that since the letter's quoted language is not found in the solicitation, WHS could not rely on it to exclude G4S from the competition and that WHS's decision was therefore arbitrary and capricious.  Alternately, G4S argues that since WHS fully evaluated the proposal in the first round of evaluations, WHS's subsequent determination that the same proposal was unacceptable is a "post-hoc rationalization, and evidences a bias against G4S . . . ."  Pl.'s Mot. JAR at 26.

The court agrees with the government and M.C. Dean that WHS acted rationally in removing G4S from the competition on the grounds stated by the government.  The record shows that the agency considered the assumptions and exclusions contained in G4S's proposal and reasonably determined that they precluded the agency from validating the price reasonableness and realism.[14]  AR 1877; see Orion, 2013 WL 141740 at *6 (holding that the agency reasonably excluded the plaintiff's proposal when it concluded that failure to include certain cost/price data precluded a cost realism analysis). In the re-evaluation itself, WHS found that the Mark Center assumption "makes [G4S's] price subject to adjustments and therefore not a firm fixed price."  AR 1878.  The agency

---

[14] Although WHS misquoted certain language from the original solicitation in its letter to G4S, the contemporaneous record demonstrates that the agency properly applied the requirements of the amended solicitation.  See OTI Am., Inc. v. United States, 68 Fed. Cl. 108, 118 (2005) ("A court reviewing an administrative record should focus on the 'contemporaneous' record made at the time the action was taken.") (citing Camp v. Pitts, 411 U.S. 138, 142 (1973)).

further concluded that other non-priced portions of G4S's proposal would result in "an increase in the risk and cost." AR 1879. After noting that "all Offerors were told that this will be a firm-fixed price contract, and that accepting any assumptions would not be consistent with a fixed price arrangement," WHS rationally concluded that G4S's proposal "was inconsistent with the Request for Proposal" and that the offered price could not be validated. AR 1880. These conclusions were consistent with amended section M.1 of the solicitation and WHS's requirement for a firm fixed price and formed a rational basis for excluding G4S.

Similarly, the court finds that the agency's earlier decision to consider fully G4S's proposal during the first evaluation does not preclude it from excluding G4S upon re-evaluation. An agency is afforded the discretion to change its mind during the course of an evaluation. Glenn Defense Marine (Asia), PTE Ltd. v. United States, 105 Fed. Cl. 541, 569 (2012). The record shows that WHS expressed concerns with G4S's pricing assumptions and exclusions during the initial evaluation. This did not change. G4S does not point to any evidence on the record that WHS's eventual decision to exclude G4S was "designed to manufacture support to make an award to M.C. Dean." Pl.'s Mot. JAR at 26. Nor does G4S show a "clear and prejudicial violation of applicable statutes or regulations." Garufi, 238 F.3d at 1333. The agency specifically warned the bidders that the corrective action would not be limited to re-evaluation of their past performance. AR 1784. As such, the court finds that WHS rationally excluded G4S from the competition. Having concluded that WHS properly excluded G4S from the bid completion, the court does not address further G4S's contention regarding WHS's technical ratings or its

34

objections to M.C. Dean's ratings and price.  Once G4S was properly excluded, it had no

chance of award and thus it cannot show that it was prejudiced by any of the alleged

errors in WHS's evaluation of either its proposal or that of M.C. Dean's.  Accordingly,

the government's and M.C. Dean's motions for judgment on the administrative record are

**GRANTED**.  G4S's motion is **DENIED**.  In such circumstances the court has no

occasion to evaluate whether injunctive relief is appropriate.

## IV.      Conclusion

For the foregoing reasons, the government's and the defendant-intervenor's

motions to dismiss are **DENIED**, the plaintiff's motion for judgment on the

administrative record is **DENIED**, and the government's and the defendant-intervenor's

cross-motions for judgment on the administrative record are **GRANTED**.  Each party

shall bear its own costs.  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge